**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

DOUGLAS RIVERA,

                                        Petitioner,

        v.                                                    9:20-CV-865
                                                              (GTS/ATB)

JOHN RICH,

                                        Respondent.

DOUGLAS RIVERA, Petitioner, pro se
MARGARET A. CIEPRISZ, AAG, for Respondent

ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

**REPORT-RECOMMENDATION**

This matter has been referred to me for Report and Recommendation by the

Honorable Glenn T. Suddaby, Chief United States District Judge, pursuant to 28 U.S.C.

§ 636(b) and N.D.N.Y. Local Rule 72.3(c).

Petitioner, currently incarcerated at Elmira Correctional Facility, filed this

petition pursuant to 28 U.S.C. § 2254, challenging a 2015 judgment of conviction in

Montgomery County Court, based on his guilty plea to one count of Burglary in the

Second Degree.  (Petition ("Pet.") at 2) (Dkt. No. 1).[1]  Pursuant to a plea agreement,

petitioner was sentenced to serve fourteen years of imprisonment, with five years of

post-release supervision.  (*Id.* at 3).  He was also ordered to pay $5,000 in restitution.

(*Id.*).  The Appellate Division, Third Department unanimously affirmed petitioner's

---

[1]Citations to the petition refer to the pagination generated by the court's electronic filing system ("CM/ECF").  Citations to the state court record ("SR."), May 13, 2015 arraignment ("5/13/15 T."), June 23, 2015 guilty plea allocution ("Plea Hearing"), and August 24, 2015 sentencing proceeding ("S.") refer to their original pagination.

conviction, and the New York Court of Appeals denied leave to appeal. *People v. Rivera*, 164 A.D. 3d 1573 (3d Dep't 2018), *lv. denied*, 32 N.Y. 3d 1177 (2019).

Petitioner raises the following claims for this court's review:

1. Petitioner's guilty plea was constitutionally deficient because (i) the plea colloquy failed to establish the elements of the crime of Burglary in the Second degree and was otherwise insufficient, and (ii) the guilty plea was not knowingly and intelligently entered.

2. Petitioner received ineffective assistance of counsel.

3. The trial court lacked jurisdiction over plaintiff's case because the grand jury had no authority to issue an indictment.

4. Plaintiff's sentence was illegal as a matter of law, and the procedure used at the hearing to determine plaintiff's sentence violated his due process rights.

5. Plaintiff was prejudiced by prosecutorial misconduct throughout his guilty plea allocution and at sentencing.

6. The cumulative effect of the constitutional errors raised by petitioner entitle him to habeas relief.

(Pet. at 9–28). Respondent has filed an answer to the petition, together with the pertinent state court records and a memorandum of law. (Dkt. Nos. 13, 14, 15). For the following reasons, this court agrees with respondent and will recommend dismissal of the petition.

## DISCUSSION

## I. <u>Relevant Facts</u>

Respondent has included a detailed description of the facts and procedural

2

history of this case.  (Dkt. No. 13 at 3–14).  The court will summarize and supplement

the facts as necessary for clarity and to discuss the grounds raised by petitioner.

### A.    Trial Court Proceedings

In January 2015, petitioner was arrested for crimes alleged to have occurred at

the Amsterdam, New York home of J.S. on July 16, 2014 and October 19, 2014.  On

May 7, 2015, a Montgomery County grand jury returned a four-count indictment

charging petitioner with Burglary in the Second Degree and Robbery in the Third

Degree relative to the July 16, 2014 incident; and Burglary in the Second Degree and

Petit Larceny with respect to the October 19, 2014 incident.  (SR. at 55–56).  Petitioner

was arraigned on May 13, 2015, at which appearance he was represented by public

defender Andrew DeLuca.  (5/13/15 T. at 1–5).  A pre-trial conference was scheduled

for June 25, 2019, prior to which the government noted that petitioner's video-taped

confession had been provided to the defense.  (5/13/15 T. at 4; Plea Hearing at 8).

On June 23, 2015, a few days prior to the pre-trial conference, petitioner

appeared in court, represented by public defender Jeffrey Francisco, to discuss a plea

offer from the government.  (Plea Hearing at 1–18).  Specifically, petitioner would

plead guilty to Count 1 (Burglary in the Second Degree) in full satisfaction of the four-

count indictment and any other uncharged crimes contemplated against him.[2]  (*Id.* at

---

[2]It appears that petitioner was also a suspect with respect to another burglary at the home of the same victim, as well as an unrelated burglary at a business establishment in the city of Amsterdam. (Plea Hearing at 3).

3

2–3).  The court would then adjourn the matter for preparation of a pre-sentence report, and at sentencing the court would impose a determinate term of fourteen years incarceration, plus a five year term of post-release supervision.  (*Id.*).  Petitioner would also be responsible for paying the mandatory state surcharge, crime victim fee and restitution; along with submitting a sample of his DNA and abiding by an order of protection in favor of the victim.  (*Id.* at 2–3).

At the plea hearing, Mr. Francisco stated that petitioner had agreed to plead guilty under the stated terms, with the exception that counsel could argue for a shorter prison term at sentencing, as it was the defense's position that fourteen years was excessive under the circumstances.  (*Id.* at 4).  Petitioner then confirmed to the court that he understood the terms of the proposed agreement, and he wished to plead guilty.  (*Id.* at 4–5).  The court swore petitioner in, and led him through a lengthy plea allocution before accepting his guilty plea.  (*Id.* at 5–18).

Petitioner appeared for sentencing with Mr. Francisco on August 24, 2015.  (S. at 2–25).  The government asked the court to impose a fourteen year sentence and requested a $5,000 order of restitution.  (S. at 3).  Petitioner, through counsel, consented to the requested amount of restitution, but argued that a shorter term of imprisonment was appropriate.  (*Id.*).  Mr. Francisco further represented that, despite the overwhelming indicators of guilt compelling petitioner to take a plea in this case, petitioner's former drug habit and minimal criminal history should be considered

4

mitigating factors. (S. at 4). Thus, Mr. Francisco requested that the court impose a ten

year term of imprisonment. (S. at 7). Petitioner also went on the record to apologize

for his crime and thank his attorney for his work. (S. at 11–13). Ultimately, in addition

to restitution, the court imposed the originally contemplated fourteen year term of

imprisonment, followed by five years of post-release supervision. (S. at 22).

**B.    Direct Appeal**

Petitioner filed both a counseled brief (SR. at 1–9) and a pro se supplemental

brief (SR. at 58–91) on direct appeal to the Third Department Appellate Division. As

relevant to his habeas petition, petitioner raised the following arguments: (1) the guilty

plea was "jurisdictionally defective," (2) the guilty plea was not knowing, voluntary, or

intelligent, (3) the plea colloquy was factually insufficient, (4) counsel was ineffective

for failing to alert the court of the plea agreement deficiencies, (5) the guilty plea was

illegal and improper due to factual inconsistencies, (6) his sentence was illegal and

denied him due process, and (4) defense counsel provided ineffective assistance of

counsel throughout the plea agreement and sentencing. (SR. at 63–83, 86–91). On

August 6, 2018, the Appellate Division unanimously affirmed the judgment of

conviction. *People v. Rivera,* 164 A.D.3d 1573 (3d Dep't 2018) (SR. at 115–17). On

June 11, 2019, the Court of Appeals denied petitioner's counseled application for leave

to appeal. *People v. Rivera,* 32 N.Y.3d 1177 (2019) (SR. at 160).

## C.    Postjudgment Motions

On November 13, 2019, petitioner filed a pro se motion pursuant to New York Criminal Procedure Law ("CPL") § 440.10, asserting that (1) his guilty plea was not knowing, voluntary and intelligent, (2) counsel was ineffective in connection with the guilty plea and for other reasons, (3) the grand jury lacked authority to issue an indictment, and thus the trial court had no jurisdiction over the case, (4) the government misrepresented the facts during the guilty plea hearing and at sentencing, (5) the cumulative impact of various errors denied petitioner due process, (6) the trial court improperly relied on the pre-sentence investigation report to determine the amount of restitution to order, and (7) the plea colloquy was factually insufficient.  (SR. at 169–78, 186–210).

On the same date, petitioner filed a motion to set aside his sentence pursuant to CPL § 440.20, asserting that (1) the court improperly used information contained in the pre-sentence investigation report to enhance his sentence, (2) the court improperly delegated the "sentencing function" to the probation department, (3) defense counsel was ineffective for failing to object to the sentencing improprieties, and (4) defense counsel improperly instructed petitioner not to object to the proposed restitution.  (SR. at 215–20).

The Montgomery County trial court denied both petitioner's section 440.10 and 440.20 motions on March 2, 2020.  (SR. at 243–45).  The Appellate Division denied

petitioner's application seeking leave to appeal the trial court's decision on May 15, 2020.  (SR. at 269).

## II.    <u>Generally Applicable Law</u>

### A.    **Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")**

The AEDPA provides that, when a state court has adjudicated the merits of a petitioner's constitutional claim, a federal court may grant an application for a writ of habeas corpus only if "the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  *See also, e.g.*, *Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir. 2001); *Brown v. Alexander*, 543 F.3d 94, 100 (2d Cir. 2008).  This is a "difficult to meet," and "highly deferential standard for evaluating state-court rulings, which demands that state court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citations omitted).

To determine whether a state-court decision is contrary to clearly established Supreme Court precedent, the federal court must consider whether the state court decision "'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set of facts' that were before the state court." *Id*. at 182  (quoting *Williams v. Taylor*, 529 U.S. 362, 406 (2000)) (alterations in original).  A state court decision

7

involves an unreasonable application of clearly established Supreme Court precedent if it correctly identifies the governing legal principle, but unreasonably applies or unreasonably refuses to extend that principle to the facts of a particular case. *See Williams*, 529 U.S. at 413; *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000).

Under the AEDPA, a state court's factual findings are presumed correct, unless that presumption is rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). If the state court failed to decide a claim "on the merits," the pre-AEDPA standard of review applies, and both questions of law and mixed questions of law and fact are reviewed *de novo. Washington v. Shriver*, 255 F.3d 45, 55 (2d Cir. 2001). Finally, the Supreme Court has held that circuit and district court decisions do not constitute "clearly established Federal Law, as determined by the Supreme Court." *Parker v. Matthews*, 567 U.S. 37, 40 (2012). Instead, circuit court decisions may illustrate the "possibility" of fairminded disagreement, sufficient to justify denying the writ. *White v. Woodall*, 572 U.S. 415, 422 n.3 (2014).

## B.    Exhaustion

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, . . . thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (internal quotation and other citations omitted)); 28 U.S.C. § 2254(b)(1). The prisoner must "fairly

present" his claim in each appropriate state court, including the highest court with powers of discretionary review, thereby alerting that court to the federal nature of the claim. *Id.*; *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994).

"A habeas petitioner has a number of ways to fairly present a claim in state court without citing 'chapter and verse' of the Constitution, including '(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.'" *Hernandez v. Conway*, 485 F. Supp. 2d 266, 273 (W.D.N.Y. 2007) (quoting *Daye v. Attorney General*, 696 F.2d 186, 194 (2d Cir. 1982)).

Where a petitioner has failed to exhaust his claims, but he cannot return to state court, petitioner's claims are then "deemed" exhausted, but barred by procedural default. *Bossett v. Walker*, 41 F.3d 825, 828-29 (2d Cir. 1994).  The merits of such a procedurally defaulted claim may not be reviewed by a federal court unless the petitioner can show both cause for the default and actual prejudice resulting from the alleged violation of  federal law, or if he can show that the constitutional violation has resulted in the conviction of one who is "actually innocent." *Rivas v. Fischer*, 687 F.3d 514, 540 (2d Cir. 2012); *Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) (internal quotation and citations omitted).  The actual innocence prong is referred to as the

fundamental miscarriage of justice exception. *Rivas, supra*. "Cause" exists if "the prisoner can show that some objective factor external to the defense impeded counsel's effort to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Prejudice exists if there is a "reasonable probability" that the result of the proceeding would have been different absent the alleged constitutional violation. *Stickler v. Greene*, 527 U.S. 263, 289 (1999).

## C.    Adequate and Independent State Ground Doctrine

A federal judge may not issue a writ of habeas corpus if an adequate and independent state-law ground justifies the prisoner's detention, regardless of the federal claim. *See Wainwright v. Sykes*, 433 U.S. 72, 81-85 (1977). A federal habeas court generally will not consider a federal issue if the last state court decision to address the issue "'rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Garvey v. Duncan*, 485 F.3d 709, 713 (2d Cir. 2007) (quoting *Lee v. Kemna*, 534 U.S. 362, 375 (2002)) (emphasis added). This rule applies whether the independent state law ground is substantive or procedural. *Id*. When the independent and adequate state ground supporting a habeas petitioner's custody is a state procedural default, additional concerns come into play. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *see also Whitley v. Ercole,* 642 F.3d 278, 286 (2d Cir. 2011) (quoting *Garcia v. Lewis*, 188 F.3d 71, 76 (2d Cir. 1999) ("[P]rocedural default in the state court will . . . bar federal habeas review when the last state court

rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.") (internal quotation marks omitted)).

There are certain situations in which the state law basis for decision will not be considered "adequate": (1) where failure to consider a prisoner's claims will result in a "fundamental miscarriage of justice," *Coleman*, 501 U.S. at 750; (2) where the state procedural rule was not "'firmly established and regularly followed,'" *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991); *James v. Kentucky*, 466 U.S. 341, 348-349 (1984); and (3) where the prisoner had "cause" for not following the state procedural rule and was "prejudice[d]" by not having done so. *Wainwright v. Sykes*, 433 U.S. at 87. In certain limited circumstances, even firmly established and regularly followed rules will not prevent federal habeas review if the application of that rule in a particular case would be considered "exorbitant." *Garvey v. Duncan*, 485 F.3d at 713-14 (quoting *Lee v. Kemna*, 534 U.S. at 376).

In order to find that the application of a generally sound rule is exorbitant, the court considers (1) whether the alleged procedural violation was actually relied upon by the state court and whether perfect compliance with the state rule would have changed the court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner "substantially complied" with the rule given the realities of trial and whether demanding perfect compliance with the rule would serve a legitimate governmental

interest.  *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003).

### III.    Analysis of Petitioner's Claims

#### A.    Voluntariness of Guilty Plea

On habeas review, petitioner argues that his guilty plea was not knowing, voluntary, and intelligent.  (Pet. at 10–15, 18–24).  He has cited several different bases on which he contends the court should find in his favor with respect to this issue, some of which were raised in his direct appeal and some in his collateral motions for relief. The court will address each of petitioner's contentions in turn.

#### 1.    Challenges on Direct Appeal

In his direct appeal to the Appellate Division, petitioner raised two challenges to the voluntariness of his guilty plea which now, arguably, appear in his petition for habeas review: (1) although he agreed to plead guilty to Burglary in the Second Degree under one subsection of the statute, petitioner was required to admit facts, and the court imposed a sentence, pursuant to a different subsection of the statute; and (2) the court took into account the second Burglary charge against petitioner at sentencing, despite the fact it was dismissed as a part of the plea agreement.  (SR. at 63–68).

On appeal, the Appellate Division found that petitioner had failed to preserve these claims because he did not file "an appropriate post-allocution motion."  *Rivera,* 164 A.D.3d at 1574.  (SR. 116).  New York courts "routinely and regularly require defendants to make a motion . . . to withdraw their guilty plea or to vacate the judgment

12

in order to preserve for appeal any claim relating to the validity of the plea itself[.]"
*Snitzel v. Murry*, 371 F. Supp. 2d 295, 301 (W.D.N.Y. 2004) (citing cases). It is well
settled that the Appellate Division's reliance on this state procedural rule constitutes an
"adequate and independent" ground for its decision. *See Hill v. Colvin,* No.
9:16-CV-1301 (MAD), 2018 WL 736013, at *13 (N.D.N.Y. Feb. 6, 2018) (collecting
cases). Accordingly, this constitutes a procedural default of petitioner's claims.

As previously discussed, procedurally defaulted claims are not subject to habeas
review unless a petitioner shows cause for the default and actual resulting prejudice, or
that the denial of habeas relief would result in a fundamental miscarriage of justice, i.e.,
that he or she is actually innocent. Here, petitioner has failed to allege, let alone
establish, cause for this procedural default and prejudice arising therefrom, or that a
fundamental miscarriage of justice will occur if this court fails to consider these claims.
Accordingly, petitioner's challenges to the voluntariness of his guilty plea as raised in
his direct appeal may be dismissed.

### 2.    Collateral Challenges

Petitioner subsequently raised the following challenges to the voluntariness of
his guilty plea in his CPL § 440.10 motion: (1) petitioner was not aware of the
accusations or charges against him due to defense counsel's failure to communicate; (2)
petitioner did not know the terms of the plea offer until the day he pled guilty, at which
time defense counsel only spent five minutes discussing the offer with him; (3)

13

petitioner's plea was coerced due to his physical condition at the time, and defense counsel's false statements that petitioner would otherwise face a 30-to-40 year sentence; and (4) petitioner was unaware that the court would rely on information about the offense contained in the presentence report.  (SR. at 172, 174, 177–80, 186–88, 192, 197–203).

The trial court rejected petitioner's voluntariness claims on the merits, noting that petitioner's "unsupported and self-serving conclusory allegations are contradicted by his statements and other proof contained in the record." (SR. at 244).  Specifically, Judge Catena found that petitioner had a full opportunity to consult with his attorney, and engaged in an extensive plea colloquy with the court, which did not cast doubt upon his guilt or competence. (*Id.*).  He noted that petitioner was fully apprised of the waiver of his right to a jury trial and to be confronted by witnesses. (*Id.*).  The court relied on petitioner's representation that he understood the nature of the plea agreement, along with petitioner's statement to the court that "I am pleading guilty because I am, in fact, guilty . . . yes, I did that burglary." (*Id.* at 244–45).  The court also relied on petitioner's representation that no one pressured him, coerced him, or made any threats against him with respect to the plea. (*Id.* at 245).

The trial court's decision was neither contrary to, nor an unreasonable application of, Supreme Court precedent. "The Due Process Clause . . . requires an affirmative showing that a defendant's plea is entered both knowingly and voluntarily

before the trial court may accept the plea." *Hill v. Colvin*, 2018 WL 736013, at *14

(citing inter alia *Godinez v. Moran*, 509 U.S. 389, 400 (1993)).  The standard for

determining the validity of a guilty plea is "whether the plea represents a voluntary and

intelligent choice among the alternative courses of action open to the defendant." *De

Leon v. United States*, No. 6:18-CR-06094, 2020 WL 3269139, at *4 (W.D.N.Y. June

17, 2020) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).  "A plea of guilty

entered by one fully aware of the direct consequences, including the actual value of any

commitments made to him by the court, prosecutor, or his own counsel, must stand

unless induced by threats (or promises to discontinue improper harassment),

misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by

promises that are by their nature improper as having no proper relationship to the

prosecutor's business (e.g. bribes)." *Id.* (quoting *Brady v. United States*, 397 U.S. 742,

755 (1970) (quotation and footnote omitted)).

    In evaluating whether a plea was knowing and voluntary, a court may consider,

"among other things, [a petitioner's] allocution statements." *Carpenter v. Unger*, Nos.

9:10-CV-1240; 9:12-CV-0957 (GTS/TWD), 2014 WL 4105398, at *19 (N.D.N.Y. Aug.

20, 2014) (citing *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997)).  In this

case, the transcript of the proceeding at which petitioner ultimately pled guilty

establishes that the trial court engaged in a lengthy colloquy with petitioner before

accepting his guilty plea.  Admittedly, and as the Appellate Division concluded, the

trial court's inquiries with respect to the waiver of petitioner's right to appeal "fell short," thus rendering his appellate waiver invalid. (SR. at 116). Nevertheless, after confirming his desire to accept the government's offer, petitioner was placed under oath and asked a series of questions about the nature of his plea. (Plea Hearing at 4–5). Petitioner confirmed that he was not under the influence of any alcohol, drugs, or other medication. (*Id.* at 6). He represented that no one had pressured him, coerced him, or made any threats which caused him to enter into the plea. (*Id.* at 5–6). Petitioner acknowledged that in pleading guilty he was forfeiting numerous rights including his right to a jury trial, to confront his accusers, to testify, to file certain motions with the court such as pre-trial suppression hearings, to present any defense to the allegations, and his right against self-incrimination. (*Id.* at 6–7). Then, under oath, petitioner stated, "I am pleading guilty because I am, in fact, guilty. Even before – I didn't even get arrested and I told . . . the detective that, yes, I did that burglary." (*Id.* at 8). He acknowledged that his plea was made "freely and voluntarily," and that he understood he did not have to plead guilty. (*Id.* at 9). He also expressed that he was "more than satisfied" with the services of his attorney. (*Id.*).

Petitioner's sworn testimony directly contradicts his present contention that his guilty plea was not made knowingly and voluntarily. With respect to his allegations of 'coercion,' plaintiff's statements under oath that he was pleading guilty of his own free will, in the absence of any coercion, are afforded a " 'strong presumption of verity' . . .

16

and create a 'formidable barrier' to habeas relief." *De Leon v. United States*, 2020 WL 3269139, at \*5 (internal citations omitted); *see also Adames v. United States*, 171 F.3d 728, 732 (2d Cir. 1999) ("A criminal defendant's self-inculpatory statements made under oath at his plea allocution 'carry a strong presumption of verity,' and are generally treated as conclusive in the face of the defendant's later attempt to contradict them[.]' ") (internal quotation and citation omitted). Moreover, there is no evidence that defense counsel's warning petitioner was facing a longer term of imprisonment was inaccurate nor coercive – had petitioner been convicted on all four counts contained in the indictment, it is clear that he would have certainly been sentenced to a period longer than that imposed as a result of his plea agreement. *See Spikes v. Graham*, No. 9:07-CV-1129 (DNH/GHL), 2010 WL 4005044, at \*7 (N.D.N.Y. July 14, 2010), *report and recommendation adopted*, 2010 WL 3999474 (N.D.N.Y. Oct. 12, 2010) ("It is not coercion if a defendant pleads guilty to avoid a harsher sentence.") (citation omitted).

The same is true to the extent that plaintiff claims his plea was not knowingly entered or understood. The record suggests that plea negotiations were conducted between the attorneys for some time prior to the plea hearing (S. at 8), and petitioner's on-the-record statements belie his current assertions that he lacked the time to process, or ability to understand, the agreement he was entering into. Petitioner's contention that he was not aware of the charges in the indictment are further disingenuous, to the extent the trial court specifically read the charges to petitioner at his May 2015

arraignment, and petitioner's attorney acknowledged receipt of the indictment. (5/13/15 T. at 3–4). As for petitioner's contention that he was sick with heroin withdrawal at the time, petitioner has not offered any proof of the same, or that he would have rejected the plea agreement and pursued trial but for his alleged physical status. *See Harrison v. Thompson*, No. 9:20-CV-705 (MAD/ATB), 2021 WL 1599121, at *6 (N.D.N.Y. Apr. 23, 2021) (guilty plea not involuntary where petitioner "failed to produce any proof that he was under the influence of drugs during the time of his plea, or that he would have rejected the plea agreement and proceeded to trial had he not been under the influence of marijuana.").

As petitioner's present assertions that his guilty plea was not knowingly and voluntarily entered are "wholly contradicted by the record . . . they are insufficient to entitle petitioner to relief." *Woods v. Superintendent*, No. 9:19-CV-505 (GLS), 2020 WL 3642311, at *9 (N.D.N.Y. July 6, 2020) (citing *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)). Accordingly, petitioner's request for habeas relief on this basis should be denied.

### B.    Sufficiency of Plea Colloquy

Petitioner also contends that the plea colloquy was factually insufficient because it failed to establish two of the requisite elements of the crime to which he was pleading guilty, and otherwise contained improper discrepancies. (Pet. at 10–16). When petitioner raised this argument on direct appeal, the Appellate Division declined to

address this claim because petitioner had failed to file a post-allocution motion to

withdraw his guilty plea. (SR. at 116). As previously discussed, this rule constitutes an

independent and adequate state procedural rule that bars habeas review. *See Hill v.

Colvin,* 2018 WL 736013 at *13. Petitioner has failed to allege any cause or prejudice

attributable to the procedural default, nor does he allege that he is actually innocent.

*See Cooper v. Lapra*, No. 18-CV-9405, 2020 WL 5261192, at *4 (S.D.N.Y. May 7,

2020), *report and recommendation adopted*, 2020 WL 3264219 (S.D.N.Y. June 17,

2020) ("[I]f the state court's decision rests on an independent and adequate state

procedural ground, then federal habeas corpus review is barred, unless the petitioner

can demonstrate cause for the procedural default, and actual prejudice resulting from

the alleged constitutional violation or that he is actually innocent."). Thus, this court

may not review petitioner's defaulted claim.

    To the extent this claim is not procedurally barred due to the subsequent

arguments raised in petitioner's § 440.10 motion, it nevertheless evades federal review.

It is well settled that a claim the factual allocution of a guilty plea was insufficient "is

not cognizable on federal habeas review." *Devault v. Griffin*, No. 16-CV-7281, 2020

WL 5217149, at *8 (S.D.N.Y. Jan. 22, 2020), *report and recommendation adopted*,

2020 WL 5209731 (S.D.N.Y. Aug. 31, 2020) (quoting *Payton v. Racette*, No.

11-CV-1260, 2015 WL 9581877, at *5 (E.D.N.Y. Dec. 30, 2015)). "The United States

Constitution does not require that the court conduct a factual inquiry before accepting a

defendant's guilty plea." *Id.* (citations omitted); *see also Willbright v. Smith*, 745 F.2d 779, 780 (2d Cir. 1984) ("[D]ue process does not mandate a factual basis inquiry by state courts."); *Mayo v. Perez*, No. 11-CV-3817, 2014 WL 4829350 at *3 (E.D.N.Y. Sept. 24, 2014) ("Nor does the United States Constitution require a factual inquiry for a court to accept a guilty plea. Rather, it is the Federal Rules of Criminal Procedure, not due process, that requires federal courts to conduct a factual inquiry before accepting a guilty plea."). Accordingly, petitioner's claim contesting the factual sufficiency of his plea colloquy would not be cognizable on habeas review in any event, and should be dismissed.

## C.   <u>Sentencing</u>

Petitioner has raised several claims relative to his sentencing which were presented to the state court both on direct appeal and in petitioner's § 440.20 motion. (Pet. at 16, 24–29). Specifically, petitioner contends that: (1) his sentence constituted cruel and unusual punishment in violation of the Eighth Amendment; (2) the trial court improperly relied on the presentence report and facts to which the petitioner never admitted, in order to enhance petitioner's sentence; and (3) the procedure used to determine petitioner's sentence violated his due process rights. Upon review, both the Appellate Division and the trial court rejected petitioner's claims on the merits. (SR. 115–17, 243–45). The Appellate Division specifically noted that "[t]he balance of [petitioner's] pro se claims, including his assertion that he was denied due process, have

been examined and found to lack merit."  (SR. at 117).

Petitioner has failed to show that the state courts' rejection of his sentencing claims violated clearly established Supreme Court law.  The Eighth Amendment prohibits the infliction of "cruel and unusual punishment."  U.S. Const. Amend. VIII. "In the context of noncapital cases, the Eighth Amendment forbids only extreme sentences which are 'grossly disproportionate' to the crime of conviction . . . [which] is 'applicable in only the exceedingly rare and extreme case.' " *Mendoza v. Miller*, No. 04-CV-1270, 2008 WL 3211277, at *4 (N.D.N.Y. Aug. 6, 2008) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 72, 73 (2003)). "Whether Petitioner presents his claim as a violation of the Eighth Amendment by it being 'cruel and unusual' or 'harsh and excessive,' the fact remains that '[n]o federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law.' " *Brown v. Jones*, No. 9:18-CV-0815(LEK/CFH), 2021 WL 1294139, at *10 (N.D.N.Y. Apr. 7, 2021) (quoting *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992)); *see also Taylor v. Connelly*, 18 F. Supp. 3d 242, 268 (E.D.N.Y. 2014) ("An excessive sentence claim may not provide grounds for habeas corpus relief where a petitioner's sentence is within the range prescribed by state law.").

Here, under NY Penal Law § 70.02(3)(b), petitioner was exposed to a maximum of fifteen years imprisonment for his conviction by guilty plea to Burglary in the Second Degree.  Ultimately, the court sentenced petitioner to a term of fourteen years of

imprisonment, which "is within the range prescribed by [the Penal Law]." *White*, 969 F.2d at 1383. Since the sentence imposed was plainly within the statutory limits, and, thus, was also not grossly disproportionate to the crime, petitioner is not entitled to habeas relief on this basis.

Petitioner's remaining claims appear to implicate his right to due process at sentencing. "[T]here is no doubt that the Due Process Clause is implicated at sentencing, and that a defendant has a right to question procedures that lead up to the imposition of sentence." *Livingston v. Annucci*, No. 9:18-CV-00803 (JKS), 2021 WL 1091464, at *4 (N.D.N.Y. Mar. 22, 2021)(quoting *United States v. Carmona*, 873 F.2d 569, 574 (2d Cir. 1989)). However, all of the strict procedural safeguards and evidentiary limitations of a criminal trial are not required at sentencing. *Id.* (citing *Williams v. New York*, 337 U.S. 241, 250 (1949)).  Instead, a sentencing court is afforded "wide discretion" when determining appropriate sentences. *See, e.g., Wasman v. United States*, 468 U.S. 559, 564 (1984); *Williams*, 337 U.S. at 246. Any information or circumstance shedding light on the defendant's background, history and behavior is proper for the sentencing judge to consider when the judge makes his or her determination. *Williams*, 377 U.S. at 249-50; *see also Pennsylvania ex rel. Sullivan v. Ashe*, 302 U.S. 51, 55, 58 (1937) ("For the determination of sentences, justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense

22

together with the character and propensities of the offender"). This is to "ensure[ ] that the punishment will suit not merely the offense, but the individual defendant." *Pepper v. United States*, 562 U.S. 476, 488 (2011) (internal quotation marks omitted). Due process is violated when the information on which the defendant is sentenced is "materially untrue" or is, in fact, "misinformation." *See Schwartz v. Comm'r of Correction,* No. 3:19-CV-1149, 2020 WL 6263545, at *10 (D. Conn. Oct. 23, 2020) (citing *Townsend v. Burke*, 334 U.S. 736, 741 (1948) (concluding sentencing based on "materially untrue" assumptions concerning a prisoner's criminal record was inconsistent with due process of law)).

In addition to finding that nothing in the record warranted a reduction of petitioner's sentence in the interest of justice, the Appellate Division further concluded that petitioner's due process claims were meritless. (SR. at 116–17). Upon review of the record, including the sentencing proceeding transcript, this court concludes that the Appellate Division reasonably determined that the trial court did not violate petitioner's due process rights. The record reflects that defense counsel was in receipt of the presentence investigation prior to sentencing, and neither petitioner nor his attorney pointed out errors requiring correction, despite their numerous on-the-record communications with the court. (S. at 2). Moreover, petitioner has not provided this court with any evidence that the information contained in the presentence report was actually false. The petitioner may have disagreed with some of the statements made by

the victim in her impact statement contained in the presentence report, however this did not necessarily render the victim's statements "false."

In any event, there is no evidence that the court relied on materially false information in imposing the negotiated sentence of fourteen years.  Although the court referenced that the government "has indicated something about stuffing a scarf down [the victim's throat]," a point which petitioner earlier denied, the record reflects that the sentencing court provided ample other reasons for supporting its sentencing determination, including the violence exhibited by petitioner tying up the victim and physically threatening her; the fact that the crime was planned and calculated, and was admittedly not an isolated occurrence; and the reported psychological toll on the victim. (S. at 13–17).  Thus, even if the sentencing judge mistakenly mentioned that petitioner had stuffed something down the victim's throat, the omission of this observation would not have presented the petitioner in a "dramatically different light."  *Compare Boston v. Brown*, No. 10-CV-01494, 2014 WL 726683, at *21 (E.D.N.Y. Feb. 24, 2014) (no due process violation where "sentencing judge, in addition to mistakenly mentioning that a cop was injured, properly relied on a number of considerations that justified the sentence."), *with United States v. Tucker*, 404 U.S. 443, 446–47 (1972) (trial court violated petitioner's due process rights when it relied on his two previous unconstitutional convictions, because had the judge known of the previous convictions' infirmity, "the factual circumstances of the respondent's background would have

appeared in a dramatically different light at the sentencing proceedings."). Accordingly,

this court cannot conclude that the state court's determination in this regard was

contrary to, or an unreasonable application of, clearly established federal law as

interpreted by the Supreme Court. *See Saxon v. Lempke,* 618 F. App'x 10, 12 (2d Cir.

2015) (No due process violation where record reflected that "sentencing judge was not

mislead in any way," and there was nothing in the record to suggest that the trial judge

"relied on any misstatements in her sentencing decision.").

### D.    <u>Ineffective Assistance of Counsel</u>

Petitioner raises several bases on which he contends habeas relief is warranted

due to the ineffective assistance of trial counsel.  (Pet. at 18–29).  In his direct appeal,

petitioner raised such claims against counsel for: (1) allowing petitioner to plead guilty;

(2) failing to object to the plea allocution; (3) failing to move to dismiss the indictment;

(4) failing to object to the government's reference to other crimes committed in the

victim's home, and (5) providing false information to the court that petitioner was

wearing a "disguise" while committing the subject crime.  (SR. at 73, 75, 88–91).  The

Appellate Division held that petitioner's ineffective assistance of counsel claims

relating to the voluntariness of his guilty plea were unpreserved for review, in the

absence of a post-allocution motion by petitioner seeking to withdraw his guilty plea on

these grounds.  (SR. at 116).  As previously discussed, this rule is an independent and

adequate state procedural rule that bars habeas review.  In the absence of any

established cause or prejudice to excuse the default, as well as petitioner's failure to establish a fundamental miscarriage of justice, petitioner's claims as to the voluntariness of his guilty plea, extending from his direct appeal, are barred from habeas review.  The Appellate Division concluded that "the balance of" petitioner's ineffective assistance of counsel claims raised on direct appeal lacked merit.  (SR. at 117).

Petitioner raised additional ineffective assistance of counsel claims in his CPL 440.10 and 440.20 motions, asserting defense counsel's (1) failure to properly investigate the charges; (2) failure to file any motion practice, including dismissal of the indictment; (3) failure to correct the DA's statement at sentencing that petitioner might have committed other burglaries at the victim's home, in addition to the charged offenses; (4) a "conflict of interest"; (5) failure to discuss the plea agreement with petitioner until the day petitioner pled guilty; (6) coercion of petitioner's guilty plea by warning that he faced 30-to-40 years in prison if convicted at trial; (7) failure to properly advise petitioner about restitution; and (8) failure to challenge false allegations contained in the presentence report.  Upon review, the trial court denied petitioner's motion, concluding that he was "provided with meaningful representation consistent with his constitutional rights."  (SR. at 245).

The relevant federal law governing ineffective assistance of counsel was set forth by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984).  To succeed

on a claim of ineffective assistance of counsel, a defendant must satisfy the two-pronged test set forth in *Strickland.*  First, the defendant must show that counsel's performance was deficient.  "This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth amendment."  *Hudson v. New York,* No. 07-CV-1327, 2007 WL 3231970, at *2–3 (E.D.N.Y. Oct. 30, 2007) (citing *Strickland v. Washington,* 466 U.S. at 687).  Under this prong, "[j]udicial scrutiny of counsel's performance must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Strickland v. Washington,* 466 U.S. at 689 (internal quotation marks and citations omitted).

Second, the defendant must satisfy the prejudice prong set forth in *Strickland* by showing that any deficiencies in counsel's performance actually prejudiced the defendant.  *Id.* at 692–93.  To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  In making the determination whether the specific errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge

or jury acted according to law." *Id.* at 694.

Upon review of a habeas petition claiming ineffective assistance of counsel, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland's* standard.  Were that the inquiry, the analysis would be no different than if, for example, [the district court] were adjudicating a *Strickland* claim on direct review of a criminal conviction[.]"  *Paige v. Lee*, 99 F. Supp. 3d 340, 345 (E.D.N.Y. 2015) (quoting *Harrington v. Richter,* 562 U.S. 86 (2011)).  Therefore, to the extent a habeas petitioner must show both that counsel's performance was unreasonable and that the state court's decision to the contrary was unreasonable, a "doubly deferential" standard of judicial review applies to ineffective assistance of counsel claims analyzed under 28 U.S.C. § 2254(d)(1).  *Santana v. Capra*, 284 F. Supp. 3d 525, 538 (S.D.N.Y. 2018) (citing *Knowles v. Mirzayance,* 556 U.S. 111 (2009)).

For the following reasons, this court finds that the state courts' decisions were neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent, and therefore habeas relief is not warranted.  To begin, petitioner's habeas claims regarding counsel's representation are particularly suspect, to the extent that petitioner informed the court during the plea that he was "more than satisfied" with counsel's representation and he expressly thanked his attorney for his efforts.  (Plea Hearing at 9; S. at 12–13).

Moreover, it is well-established that a voluntary guilty plea that is knowingly, intelligently, and voluntarily entered constitutes a waiver of non-jurisdictional defects occurring prior to entry of the plea. *Rodriguez v. New York State Dep't of Parole*, No. 9:18-CV-0928 (GLS/ML), 2021 WL 3888256, at *5 (N.D.N.Y. July 30, 2021) (citing *United States ex-rel. Glenn v. McMann*, 349 F.2d 1018, 1019 (2d Cir. 1967)). As the Supreme Court has explained, "a guilty plea represents a break in the chain of events which has preceded it in the criminal process." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). In this case, petitioner's guilty plea effectively waived all ineffective assistance of counsel claims relating to events prior to entry of the plea. *See United States v. Coffin*, 76 F.3d 494, 497-98 (2d Cir. 1996) ("A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea."); *see also Morris v. Smith*, No. 9:13-CV-1441 (GLS/RFT), 2015 WL 13745077, at *5 (N.D.N.Y. Jul. 29, 2015), *report and recommendation adopted*, 2016 WL 4532160 (N.D.N.Y. Aug. 30, 2016). Thus, petitioner's arguments that defense counsel should have moved to dismiss the indictment against petitioner, or that counsel failed to properly investigate the charges against him, are precluded from habeas review.

Petitioner's remaining claims, concerning counsel's alleged conduct surrounding the plea agreement and sentencing, are unavailing and fail to establish deficient representation in order to satisfy the first *Strickland* prong, much less the state court's

unreasonableness in deciding these issues.  To begin, petitioner's claim that defense

counsel coerced him to plead guilty by advising him of his sentencing exposure if

convicted on the indictment in its entirety is meritless.  Petitioner's representation that

his maximum exposure was only fifteen years is simply untrue.  Petitioner's exposure

for the offense to which he ultimately pled guilty may have been fifteen years, but on

the whole petitioner was charged with two counts of Burglary in the Second Degree,

one count of Robbery in the Third Degree, and Petit Larceny.  (SR. at 55).  The plea

agreement was entered into in satisfaction of the complete indictment, in addition to

other offenses which had yet to be charged.  Accordingly, there was nothing grossly

inaccurate or misleading about defense counsel's statements regarding the greater

sentencing exposure he might face if he did not accept the guilty plea.

Likewise, petitioner's claim that counsel failed to timely apprise him of the

contents of the indictment and implications of the plea agreement are unavailing and

unsupported by the record, in which petitioner affirmed to the court that he understood

the plea agreement and was entering into it willingly, all while praising the work of his

attorney.

With respect to the plea colloquy and petitioner's claim that counsel allowed him

to plead guilty to a different or more serious crime than intended by the plea agreement,

the court does not find that counsel's conduct constituted ineffective assistance.

Petitioner admitted each element of the charged crime of Burglary in the Second

Degree during the plea colloquy, notwithstanding his initial confusion as to which of his admitted crimes he was being asked to address. Specifically, petitioner admitted that he entered the victim's home without her permission for the purpose of taking money. There is no evidence that any of the additional information elicited during the plea allocution enhanced petitioner's sentence nor the crime of conviction, thus defense counsel had no basis to object as to any factual insufficiency.

Furthermore, counsel did not render deficient representation for commenting about petitioner's "disguise." The record suggests there was an allegation that petitioner disguised his identity to some extent when he entered the victim's home. Counsel, in an attempt to persuade the court that a lesser sentence was appropriate, used this information as evidence supporting the argument that petitioner did not plan to harm the victim, and hoped to escape without being identified. (S. at 19–20). Petitioner has failed to establish that his attorney's representation to the court was anything other than a strategic attempt to reduce petitioner's sentence. *See United States v. Melhuish*, 6 F.4th 380, 393 (2d Cir. 2021) (quoting *Gibbons v. Savage*, 555 F.3d 112, 122 (2d Cir. 2009)) ("Actions and/or omissions taken by counsel for strategic purposes generally do not constitute ineffective assistance of counsel.").

Nor has petitioner established through the record that defense counsel failed to properly advise him about restitution, or that defense counsel coerced petitioner to accept the restitution proposed by the government. At sentencing, the government

31

requested the court order $5,000 in restitution.  (S. at 3).  The court gave defense

counsel an opportunity to respond to the government's request, at which time Mr.

Francisco specifically conferred with petitioner on the issue.  (*Id.*).  Immediately after

their discussion, and in the presence of petitioner, Mr. Francisco represented to the

court that after discussing the issue with counsel, petitioner consented to the $5,000

amount as reasonable restitution.  (*Id.*).  Mr. Francisco proceeded to characterize this

concession as an act of good faith by petitioner, and a basis for which the court should

consider a lesser term of imprisonment.  (*Id.* at 3–7).  On these facts, the court finds no

basis to conclude that defense counsel's conduct was incompetent or against

petitioner's wishes, notwithstanding the fact that the court ultimately rejected counsel's

position.

Petitioner also claims that defense counsel should have objected to the

government's representation that petitioner may have committed other burglaries at the

victim's home.  However, the record makes clear that these events were cited in the

context of explaining how the victim had attempted to burglar-proof her home.  (S. at 9)

The government specifically stated that the prior offenders were unknown, and did not

suggest that petitioner was responsible for these acts.  Accordingly, there was nothing

for defense counsel to object to, and his conduct in this respect cannot be considered

deficient.

Petitioner alleges a "conflict of interest" rendered defense counsel further

ineffective, but he has not plausibly raised any basis for this claim. "An attorney labors under an actual conflict of interest for Sixth Amendment purposes if, during the course of the representation, the interests of the attorney and his client 'diverge with respect to a material factual or legal issue or to a course of action.' " *Amiel v. United States*, 209 F.3d 195, 198 (2d Cir. 2000) (citations omitted). Ineffective assistance of counsel based on conflict of interest is met if the defendant shows: "(1) a potential conflict of interest that results in prejudice to the defendant, or (2) an actual conflict of interest that adversely affects the attorney's performance." *Burke v. United States*, No. 20-CV-4034, 2022 WL 175488, at *2 (2d Cir. Jan. 20, 2022) (citing *United States v. Perez*, 325 F.3d 115, 125 (2d Cir. 2003)). Here, petitioner has not established a divergence of interest between himself and counsel, and the court's review of the record does not reveal any conflict of interest rendering counsel's conduct unconstitutional.

To the extent petitioner claims that counsel was ineffective for failing to object to "false" information contained in the presentence report, petitioner has not presented the court with any evidence corroborating this claim. Petitioner admittedly disagreed with the court's representation that he had put something in the victim's mouth during the underlying crime, and he specifically put the court on notice of this contention during the plea allocution. (Plea Hearing at 17). Otherwise, there is no indication that petitioner challenged any of the information contained in the presentence report as "false" upon receipt. The court also takes into account that, during petitioner's lengthy

33

on-the-record statement at sentencing, he made no mention of discrepancies in the presentence report, but instead continued to admit to his guilt and ask for leniency.

Even if the court were to find that the performance of petitioner's counsel fell below and objective standard of reasonableness, petitioner's claims would still fail as he has not demonstrated the "prejudice" required by the second prong of the *Strickland* test. In other words, he has not shown "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *See Chhabra v. United States*, 720 F.3d 395, 408 (2d Cir. 2013) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)) (internal quotation marks omitted). Moreover, the petitioner "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *United States v. Kimber*, 777 F.3d 553, 563 n.1 (2d Cir. 2015) (internal quotation marks omitted).

Here, petitioner has not presented an argument or any evidence to counter his recorded confession and repeated admission of guilt that informed counsel's recommendation that he plead guilty, nor has he identified any weaknesses in the government's case. Otherwise, a petitioner's "conclusory, self-serving statement that, but for counsel's alleged ineffectiveness, he would have gone to trial, does not by itself establish prejudice under *Strickland*." *Linares v. Smith*, No. 15-CV-5442, 2020 WL 3545119, at *6 (E.D.N.Y. June 30, 2020) (citing *Calderon v. United States*, 953 F. Supp. 2d 379, 385 (E.D.N.Y. 2013)). Thus, petitioner's conclusory assertion that he

would have gone to trial but-for counsel's conduct is insufficient to establish prejudice under *Strickland.*

### E.    <u>Grand Jury</u>

Petitioner next appears to assert that he did not receive a preliminary hearing, nor was he indicted within 120 hours, following his January 2015 arrest, as required by NY CPL § 180.80.  (Pet. at 24).  He further contends that due to this violation, the grand jury did not have the authority to issue an indictment against him.

Petitioner's grand jury claim is not cognizable on habeas review because it is based entirely on New York statutory law.  Federal habeas corpus relief is not a vehicle for federal courts to "reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Instead, habeas review is limited to "deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.*  Here, petitioner invokes no federal constitutional right to be indicted in a state court within the time frame set out in CPL § 180.80.  A violation of CPL § 180.80 raises "a question of state statutory procedure only and implicates no federal constitutional rights." *Dennis v. Corcoran*, No. 07-CV-6229, 2010 WL 5072124, at *9 (W.D.N.Y. Dec 7, 2010) (holding that a CPL § 180.80 claim is not cognizable on habeas review).  Accordingly, the petition should be denied with respect to this claim.

### F.    <u>Prosecutorial Misconduct</u>

Petitioner next argues that he is entitled to habeas relief due to prosecutorial

misconduct "throughout the entire process of the criminal matter, beginning from pre-indictment and up to the very moment defendant pled guilty, as well as during sentencing."  (Petition at 24).  These claims were raised in petitioner's § 440.10 motion, upon review of which the trial court denied petitioner's request "in all respects."  (SR. at 245).

To the extent petitioner argues prosecutorial conduct in "fraudulently gaining an indictment," improper plea negotiations, and any other conduct that preceded the guilty plea, these claims are foreclosed by *Tollett*.  *See Pena v. Sheahan*, No. 1:15-CV-2455, 2018 WL 3639927, at *15 (S.D.N.Y. June 22, 2018) ("[I]n light of [petitioner's] knowing and voluntary guilty plea, his prosecutorial misconduct claims are irrelevant to the constitutional validity of his conviction and, thus, cannot be the basis for federal habeas review.") (citation omitted); *United States v. Gregg*, 463 F.3d 160, 164 (2d Cir. 2006) ("[A] guilty plea . . . conclusively resolves the question of factual guilt supporting the conviction, thereby rendering any antecedent constitutional violation bearing on factual guilt a non-issue[.]").

Otherwise, petitioner's claim that the prosecutor misrepresented facts associated with the charged crimes during the plea allocution and at sentencing are unfounded. The standard of review for a habeas claim of prosecutorial misconduct is whether the prosecutor engaged in "egregious misconduct . . . amount[ing] to a denial of constitutional due process." *Floyd v. Meachum*, 907 F.2d 347, 353 (2d Cir. 1990)

36

(citation omitted).  As previously discussed, petitioner has provided no evidence that the prosecutor made false statements at sentencing, nor did petitioner or his counsel object to the prosecutor's statements in support of the government's position that petitioner should be sentenced to fourteen years of imprisonment.  The record suggests that the information cited by the prosecutor came from the presentence report and/or the victim impact statement contained therein, which had already been reviewed by the trial judge for his consideration at sentencing.  On these facts, the court cannot conclude that the prosecutor's conduct at sentencing "so infected the [proceedings] with unfairness as to" stymie petitioner's due process right to a fair trial.  *Jackson v. Conway*, 763 F.3d 115, 146 (2d Cir. 2014).

### G.   Cumulative Error

Last, petitioner argues that the cumulative effect of the alleged errors raised above warrant reversal of his conviction. "In limited circumstances, cumulative errors may serve as the basis for habeas corpus relief." *Brumfield v. Stinson*, 297 F. Supp. 2d 607, 621 (W.D.N.Y. 2003) (citation omitted). In order for a federal habeas court to find that cumulative errors justify habeas relief, "the alleged individual errors a petitioner seeks to aggregate [must be actual] errors." *Id*. (citing *Joyner v. Miller*, No. 01-CV-2157, 2002 WL 1023141, at *13 (S.D.N.Y. Jan. 7, 2002) (collecting cases)). Further, the petitioner must show that the errors are " 'so prejudicial that they rendered petitioner's trial . . . fundamentally unfair.' " *Id.* (citation omitted).  Here, however,

none of the alleged errors were found to have merit.  Further, the record is devoid of any evidence amounting to a single error justifying reversal, nor an accumulation of errors that would render petitioner's conviction fundamentally unfair.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the petition be **DENIED and DISMISSED**, and it is

**RECOMMENDED**, that a certificate of appealability be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. These objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

Dated:   April 4, 2022

Andrew T. Baxter
U.S. Magistrate Judge